James E. LUCKETT, Commissioner of Revenue of Kentucky, et al., Appellants,

v.

KENTUCKY TRUST COMPANY, Trustee under Will of Joseph Burge, Appellee.

James E. LUCKETT, Commissioner of Revenue of Kentucky, et al., Appellants,

v.

KENTUCKY TRUST COMPANY and Phillip B. Newman, Trustees under Will of Frankie N. Judge, Appellees.

Court of Appeals of Kentucky.

Feb. 6, 1959.

Edward A. Marye, Jr., Hal O. Williams, Dept. of Revenue, Legal Staff, Frankfort, for appellants.

J. Blakey Helm, Louisville, for appellees.

S. L. Greenebaum, Shelton R. Weber, Greenebaum, Barnett & Wood, Louisville, amici curiae.

MOREMEN, Judge.

The appellees in these cases are the trustee under the will of Joseph Burge, and the trustees under the will of Frankie N. Judge. The facts are similar and the issues of law the same in the two cases. On this consolidated appeal, we will consider only the facts presented by the Frankie N. Judge case.

Frankie N. Judge died testate in July 1942. Her will created a trust and designated appellees as trustees. Among the assets owned by her, which became a part of the trust, were 160 shares of common stock of the Columbia Land Company which she had acquired in 1923.

The Columbia Land Company was organized in 1923 for the purpose of purchasing the Columbia Building, built in 1889, and Louisville's first "skyscraper." In 1924, the corporation purchased a tract of land on the other side of Fourth Street, near the rear of the Columbia Building, and there erected a small two-story garage building. For many years, the Columbia Land Company owned and operated the office building and garage, and separately leased various rooms and suites of rooms to many occupants.

In July 1952, the Columbia Land Company, instead of leasing to various individuals, leased its entire business property for a term of fifteen years.

On July 31, 1952, the stockholders voted to dissolve the corporation and to distribute its assets in kind. The corporation had 1500 shares of stock outstanding, and the distribution of the real estate was made in 1/1500 shares.

The estate of Frankie N. Judge owned 160 shares of common stock and therefore, as a result of the liquidation and distribution, it received a deed for an undivided 160/1500 of the land owned by the Columbia Land Company.

The par value of the common stock of the Columbia Land Company was $100 per share. The cost to Frankie N. Judge was $80 per share or a total of $12,800. The fair cash value of the property distributed to the Judge Estate, as estimated at that time, was $46,292.80, or $289.33 per share. The book value of these stocks was $151.23 per share.

The appellees contend that the gain should be treated as being a capital gain. The appellants insist that the increment should be taxed at its fair cash value as being a "dividend" under subsection (3) of KRS 141.010, which was in force at the time. This statute deals first with regular dividends and then with a distribution of assets of a corporation which is in effect a distribution of earnings or profits and provides, in this connection, that,

> "'Dividend' means any distribution made by a corporation out of its current earnings or profits, or out of its accumulated earnings or profits, to its shareholders or members, whether the distribution is made in cash or other property. It includes such portion of

the assets of a corporation distributed at the time of dissolution as is in effect a distribution of earnings or profits, provided the distribution constitutes income to its recipient."

And in connection with property which is not earnings or profits, that

"In a distribution at the time of dissolution all money or other property received that is not in effect a distribution of earnings of the corporation shall be treated under subsection (1) of KRS 141.100."

(It should be noticed that while in the first excerpt the legislature used the words "earnings or profits" to identify the type of property which might be a dividend, in the second excerpt it used only the word "earnings" to designate the same property.)

Subsection (1) of KRS 141.100, then in effect, deals with gains or losses from the sale or other disposition of property which was not owned for a period of two years, and does not apply here because of the long period of possession. No one questions the fact that if the property had been held less than two years, the difference between the cost of the stock and the value of the real property (if some transaction had fixed that value) would be taxable as ordinary income.

Subsection (2) of the same statute deals with proceeds from property held two years or more and, so far as it is pertinent, reads:

"Income realized or loss sustained from the sale of property held two years or more shall be ignored in computing income for the purposes of this chapter * * *."

It is remarked that while the "dividend" subsection ((3) of KRS 141.010) refers only to subsection (1) of KRS 141.100 which is concerned with property held less than two years, it is easy to follow the friendly advice given in subsection (2) of the same statute and "ignore" the computation of income tax if the property has been owned for two years or more.

The issue is this: When in the liquidation of a corporation and in payment of capital stock, conveyance is made to the shareholders of property which has increased in value (mostly because of changing economic conditions or inflation), may the Department of Revenue assess additional income taxes against the stockholders under the statutes, above quoted, on the assumption that they had received ordinary income in the form of a dividend to the extent that the land had increased in value from the time it had been acquired by the corporation?

The trial court answered, "No."

As a basis for reversal, appellants rely upon the authority of Collins v. Kentucky Tax Commission, Ky., 261 S.W.2d 303. The facts were these: The Collins group owned certain shares of common stock of the Cummins Distillery Corporation. Some of the stock had been held longer than two years. The corporation was liquidated December 21, 1942. On that date the assets of the corporation consisted of whiskey in storage valued on the books of the corporation at $1,145,658.65. A distribution in kind was made to the stockholders in the form of warehouse receipts which represented the whiskey. Some four or five days later, a committee for the stockholders sold the whiskey for $4,127,000 and distributed the proceeds of the sale to the stockholders. The Collins group received $391,673.33 for their interest in the proceeds of the sale. They did not report the gain on their 1942 tax returns. The Tax Commission made additional assessments against them to cover the amount. The taxability of the proceeds of the sale for stock held less than two years was not in issue. The court held the gain was taxable as income.

We recognize sharp distinctions between the facts (and the law invoked by those facts) in the Collins case and those presented here. The Collins case involved no

distribution in kind. The warehouse receipts were passed to a committee which almost simultaneously with the dissolution of the corporation realized the increased value of the receipts by means of a sale. A reading of the opinion in the Collins case will show that the majority of this court believed that the slight delay in the sale, and, therefore the realization of the increased value, was only for the purpose of tax evasion. But regardless of motive, the situation presented was little different than it would have been if the corporation itself had sold the warehouse receipts and distributed the profits in money upon liquidation, because in both events the appreciation in value would have been, and was, realized by the simple fact of sale.

The case under consideration contains no suggestion of evasion or, for that matter, of avoidance, because the statute recognizes that there may be "a distribution at the time of dissolution * * * property * * * that is not in effect a distribution of earnings" and provides in another section for the treatment of such property.

In the Collins case there was a sale which crystalized the increment in value. In this case the appreciation is wholly unrealized and there has been no transaction which has established a realization of either profit, earnings or income. There has been no change in the original land investment. There may be some enhancement of the value of the property in the form of "unearned increment," but its amount cannot be determined by transfer on dissolution of a corporation alone where no sale is involved. The statutes give no authority for anyone to transform this value which has not been crystallized by any executed transaction into the category of "earnings or profits," so that it may constitute taxable income under subsection (3) of KRS 141.010.

The problem is one of statutory construction and it seems to us that the di-

rect intent of the statute was to avoid the taxation of unrealized capital gains as ordinary income and to place their taxation under KRS 141.100. The legislature could easily have provided, if that was their intention, that upon liquidation of a corporation a distribution of anything other than contributed capital was a dividend, taxable as ordinary income, and set up machinery and standards for value. And we find no provision of our tax law which makes taxable, as income, unrealized estimated gain in the value of capital assets.

Judgment affirmed.